JAMES FITZGERALD, as Administrator, etc., Respondent, *v.* THE CITY OF TROY, Appellant.

*Supreme Court, Third Department, General Term, September 21, 1889.*

1. *Negligence. Question of fact.*—Where a driver cannot see a hole in the sleigh track owing to the crowded condition of the streets, but manages his team with skill and prudence and omits no duty which is incumbent upon him, under the circumstances in which he is placed, as far as can be discovered, the question of contributory negligence is for the jury.
2. *Same.*—The evidence in this case was held sufficient to require the questions of defendant's negligence and plaintiff's contributory negligence to be submitted to the jury.
3. *Trial. Charge.*—The portion of a charge excepted to must be construed in connection with the whole in determining the force and value of the exception.

Appeal by the defendant from a judgment entered in favor of the plaintiff after a trial at the Rensselaer circuit. And from the order denying a motion for a new trial.

*R. A. Parmenter*, for appellant.

*F. S. Black*, for respondent.

INGALLS, J.—This action was brought by the plaintiff to recover damages for an injury to Thomas Fitzgerald, the in-

testate, which caused his death, and which is claimed by the plaintiff to have resulted from the negligence of the defendant in allowing a hole to form and continue, in a public street of said city, upon which the intestate was at the time of the injury engaged in transporting merchandise loaded upon a sleigh drawn by two horses, which he was driving. The sleigh consisted of two bobs, and the hind right hand bob went into such hole, in consequence of which the sleigh with the load was canted to the right, and Thomas Fitzgerald was thrown to the ground, and a cask of blueing was thrown from the sleigh upon him, which caused the injury complained of.

The street where the casualty occurred was a public business street of the city, and upon which there was a great amount of teaming, in the transportation of merchandise and other commodities. Two railroads, one from the south, and the other from the north, were so located that their tracks converged so that they approached each other at the locality in question so nearly that such tracks were not more than seventy-five feet apart where they crossed said street. It seems that at the time the accident occurred, the street was crowded with teams proceeding in different directions, some double, and others single teams. That the crowd was so great upon the left hand side of the street that the intestate was compelled to keep to the right, where the hole in question was located about midway between the tracks of the two railroads.

The evidence indicates that several teams were proceeding ahead of the team driven by the intestate, and occupied such a position as to obstruct the view of the street from where he was sitting upon his load, and prevented him from seeing the hole. The streets of the city were covered with snow to the depth of from one to two feet, but so evenly distributed that the sleighing was generally good. The evidence shows that, aside from the hole in question, the street where the casualty occurred was in good condition. The plaintiff produced at the trial evidence to the effect that the hole had

been in substantially the same condition for from five to seven days previous to the accident. Two witnesses testified that they had driven into it previous to the time the intestate was injured. In describing such hole, the witnesses for the plaintiff gave its dimensions as from four to six feet in length, north and south, and in depth from a foot and a half to two feet, and thirty inches in width. Patrick Burns, a witness produced by the defendant, in describing the hole, stated that it was one foot and a half deep, two feet and a half wide, and about three feet long. That witness was a flagman, at a station located very near where the intestate received the injury, and testified further that he had seen sleighs slide into the hole. The witnesses on the part of the defendant, who were its employees, in speaking of the size of the hole, estimated it at a size less than that stated by the other witnesses. The jury had all of the estimates before them, and it became their province to determine that question in view of all the evidence.

Considering the location of the street in question, and the fact that it was to such an extent used for the transportation of merchandise, and for other public uses, and regarding the location of the hole in such street, and its size and shape, as shown by the evidence, and that it was the only one discovered in that vicinity, and the length of time it had remained there previous to the accident in question, we think the trial court was justified in submitting to the jury, for their determination, in view of all the facts and circumstances disclosed, whether the defendant was chargeable with negligence in not discovering and filling the hole before the injury in question occurred. We are convinced that the evidence presented a fair question of fact in regard to such negligence of the defendant, and that the finding of the jury in that respect should not be disturbed by this court. The evidence does not indicate that the hole complained of was an ordinary depression in a snow track, caused by an unequal distribution of snow, and forming what is sometimes

denominated a dip hole, descending gradually and crosswise of the track, so that both runners of the sleigh would encounter the depression at the same time, and evenly, and therefore less likely to occasion an injury such as is complained of in this case. In this case, it appears that the hole extended lengthwise of the street, and its size and location was such as to render it difficult to be avoided, especially when the street was crowded with teams going in different directions. The hole was in the track, and the intestate was prevented it seems from driving farther to the right in consequence of an embankment of snow and ice. If a hole of that description, and thus located, in the pavement of that street had remained undiscovered, and not repaired, for such a length of time, freedom from a charge of negligence would hardly be regarded so clear as to justify taking the case from the jury. Regarding all of the circumstances, including the size, location and shape of the hole in question, we think the fact that it was in a snow track, instead of the pavement, can hardly change the rule in that respect.

The accident did not occur upon a street in a remote part of the city, where there was little travel, and nothing to particularly attract the notice or attention of the employees of the city, but in a thoroughfare, in a central part of the city, particularly devoted to the transportation of merchandise, and railroad purposes.

It seems but reasonable to expect that those who are charged with the care of the streets of a city will particularly turn their attention to those localities most used, and where danger from defects in the street may be reasonably apprehended. It was insisted upon the argument that the plaintiff should not be allowed to recover damages for the reason that the intestate was guilty of contributory negligence. We think this also became, in view of the facts, a fair question of fact for the jury to determine. It seems that the intestate managed his team with skill and prudence, and omitted no duty which was incumbent upon him, under the circum-

stances in which he was placed, so far as we discover. As has already been stated, his opportunity for particular observation was obstructed by the loaded teams which were immediately before him. The person who was injured being dead, the question of contributory negligence must be determined by the surrounding circumstances of the case, unaided by the explanation which the deceased, if living, could have given. While it is true that the plaintiff was bound to make a case from which the jury could reasonably draw the inference that the intestate was free from any negligence which contributed to the injury, yet the jury having become convinced that no such negligence on the part of the injured person had intervened, and the trial court having approved of such conclusion, we do not think that this court is called upon to indulge in extreme inferences from the evidence adversely to the plaintiff's case, upon that question, in order to reverse the judgment herein; upon the question whether the load was properly adjusted the evidence, we think, presented a fair question of fact for the jury to determine, and their conclusion in view of the circumstances should be accepted.

We think it cannot be said that the plaintiff's case, upon the question of the defendant's negligence, and also the freedom of the deceased from any negligence which contributed to the injury, is without competent evidence to sustain it, and sufficient to justify its submission to the jury, and their determination should be regarded final. Hart *v.* H. R. B. Co., 80 N. Y. 622. We have examined the various exceptions to the rulings of the court, during the progress of the trial, and discover no error which could have prejudiced the defendant's case or which calls for a reversal of the judgment. In some instances general objections were interposed without specifying any grounds therefor, and are therefore unavailing to the defendant upon appeal. In regard to the charge to the jury, and the refusal of the judge to charge certain propositions as requested, we discover no

fatal error committed by the court. In determining the value and force of an exception taken to a portion of a charge, the part assailed must be construed in connection with the entire charge, as it not infrequently happens that one portion of a charge explains, and qualifies another part thereof, and renders the whole harmonious, which might not be the result if considered in detached parts. This case, in some of its features, is peculiar, and we think it became at the trial a proper case for the jury, and we fail to discover any substantial ground for interfering with their verdict.

The judgment should therefore be affirmed, with costs.

LEARNED, P. J., and LANDON, J., concur.

---

NOTE ON " CONSTRUCTION OF CHARGE."

An appellate court will not seize hold of isolated portions of a charge for the purpose of discovering error. Caldwell v. New J. S. Co., 47 N. Y. 282.

The judgment will not be reversed, where the charge as a whole conveys to the jury the correct rule of law upon a given question. Shumaker v. Mather, 38 N. Y. St. Rep. 542. If the language used is capable of different constructions, the one will be adopted which will lead to an affirmance, unless it fairly appears that the jury was, or at least might have been, misled. Id.; Caldwell v. New Jersey S. Co., ante; Losee v. Buchanan, 51 Id. 592.

Exceptions to detached portions of a charge will not be effectual for the support of error, if it, as a whole, presents the questions fully and fairly to jury so as not to mislead them. Hickenbottom v. D. L. & W. R. R. Co., 122 N. Y. 91.

Where the whole drift of a charge on a particular question is erroneous, the error will not be cured because an expression may be found in the charge, which, standing alone, would free it from objection. People v. Flack, 125 N. Y. 324; rev'g, 57 Hun, 83.

A charge to the jury must be considered as to its purpose and effect, not piecemeal, but as a whole. Goll v. Man. R'y Co., 57 Supr. 74. If it thus conveys to the jury the correct rule of law, the judgment will not be reversed, though detached sentences may be erroneous. Id.

Particular words or expressions in a charge to a jury, though, when taken by themselves, may seem objectionable or otherwise, should not be considered independently of contextual phrases. Chellis v. Chapman, 125 N. Y. 214. If, when read in connection with the rest of the charge, the sense of the language used is made clear, its meaning explained and the instruction is not uncertain as to the subject matter, the result of the trial should not be disturbed for mere inaccuracies or carelessness in speech. Id.